PULLMAN, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

Docket No. 3757.   Promulgated February 12, 1947.

*W. J. Butler, Esq.,* and *L. M. Greenlaw, Esq.,* for the petitioner.
*Harold H. Hart, Esq.,* for the respondent.

294

OPINION.

KERN, *Judge*: The primary question for consideration here is whether the distribution to petitioner by a subsidiary corporation of $5,042,500 in exchange for 50,000 shares of the subsidiary's stock, which were canceled, was essentially equivalent to a taxable dividend within the meaning of section 115 (g) of the Internal Revenue Code.

Since the shares were redeemed at the figure which represented petitioner's basis for the stock, and not at book or fair market value, there is no question involved of capital gain or loss. The same facts indicate that the tax effects of the transaction were carefully weighed and so arranged as to relieve petitioner from tax liability.

The parties agree that the distributing corporation had an earned surplus approximating $17,000,000.

Section 115 (a) of the code defines a dividend as "any distribution made by a corporation to its shareholders * * * out of its earnings and profits accumulated after February 28, 1913 * * *."

Section 115 (b) says every distribution is made out of earnings and profits to the extent thereof. As we have seen, this distribution was in an amount less than accumulated earnings and profits.

Section 115 (g) provides that if a corporation cancels or redeems its stock at such time and in such manner as to make the distribution and cancellation or redemption essentially equivalent to the distribution of a taxable dividend, it shall be treated as such to the extent that it represents a distribution of earnings or profits accumulated after February 28, 1913.

A dividend ordinarily results in the distribution of earnings and profits to stockholders and does not affect the proportionate ownership and control of the corporation by its stockholders.

This was the net effect of the distribution presently before us. A payment was made to petitioner by the Pullman Co. out of its accumulated earnings and profits, and the proportionate interest and control of petitioner through its ownership of the stock of the Pullman Co. was reduced by .00026 per cent. The realities of the transaction clearly demand that it be treated as a dividend rather than a purchase of stock, which it purported to be. In a purchase of stock the parties would normally attempt to arrive at a purchase price which would reflect the ideas of buyer and seller with regard to its fair market value at the time of the sale, and this price thus arrived at would normally result in either a gain or a loss to the owner. Here, there was paid an amount which did not purport to reflect the fair market value, nor even the book value of the stock, but was arrived at only by reference to the stockholder's actual tax basis for the stock. The same reasoning militates against a conclusion that the transaction constituted, in effect, a partial liquidation. A complete redemption of a part of the stock of a corporation would normally imply the return to the stockholder of the full amount of the capital contribution evidenced by the shares redeemed adjusted by the proportion of the corporation's subsequent gain or loss allocable to the shares involved, i. e., the book value of the stock redeemed. It might be the par value of the stock redeemed. It would not normally be the cost basis of the stock redeemed to the individual stockholder.

The situation presented by the instant case seems to be a fair example of the type of situation which Congress appears to have had in mind when it enacted the applicable sections of the statute. See S. Rept. No. 52, 69th Cong., 1st sess., p. 15.

Petitioner earnestly contends that the redemption of the stock was not a step in a plan to distribute earnings and profits to it as a stockholder and thus subject to the provisions of section 115 (g), but was dictated by the reasonable needs of the corporate business and was thus a partial liquidation within the definition of section 115 (i). See *Samuel A. Upham*, 4 T.C. 1120, 1127.

For a discussion of some of the cases in which the doctrine of "the reasonable needs of the corporate business" as a criterion for the application of section 115 (g) to distributions purportedly in redemption of capital stock was evolved and applied, see *J. Natwick*, 36 B.T.A. 866.

The force of this doctrine has been considerably weakened by the recent pronouncements of several of the Circuit Courts of Appeal and of the Supreme Court in analogous cases. See *Commissioner* v. *Bedford's Estate*, 325 U. S. 283; *A. J. Long, Jr.*, 5 T. C. 327; affd., 155 Fed. (2d) 847; *Kirschenbaum* v. *Commissioner*, 155 Fed. (2d) 23; *Bazley* v. *Commissioner*, 155 Fed. (2d) 237. See also *Flanagan* v. *Helvering*, 116 Fed. (2d) 937, 939, 940, where the present Chief Justice of the United States, then a member of the Court of Appeals for the District of Columbia, said on behalf of the latter court: "But the net effect of the distribution, rather than the motives and plans of the taxpayer or his corporation, is the fundamental question in administering section 115 (g)."

It is not necessary for us to decide the extent to which this doctrine has thus been weakened, or to await the opinion of the Supreme Court in the *Bazley* case, which is now before it for certiorari, since, even though we accept the doctrine, we do not believe that the facts of the instant case make it applicable.

It is axiomatic that "the question of whether a distribution in connection with the retirement of a portion of corporate stock is a taxable dividend or a distribution in partial liquidation depends upon the particular facts of each individual case." *Samuel A. Upham*, *supra*, p. 1125.

We conceive the controlling facts of the instant case to be as follows: In the taxable year the Pullman Co. was conducting the same types of business which it had conducted during the period 1930–1940, and it had no intention to liquidate any part thereof. During that period the volume of its business declined, but in 1941 events occurred which indicated that the volume of its business would increase. During the period in which the volume of its business declined there was a considerable increase in its cash and liquid assets by reason of its depreciation of equipment then in use and its decision (doubtless a reasonable one) not to manufacture during a large part of that period as much new equipment as had been formerly manufactured. In 1941 the Pullman Co. had more cash and liquid assets than it deemed necessary in that year in the operation of its business, and petitioner, which was for all practical purposes the sole stockholder of the Pullman Co., wished to obtain cash and initiated the transaction whereby it surrendered a part of its stock in the Pullman Co. and obtained the amount of cash which it needed. The amount of the accumulated earnings and

profits of the Pullman Co. was approximately three times the amount of the cash thus obtained by petitioner. It should be added that the transaction here involved was given the fictitious form of a sale in which the purported purchase price reflected neither the fair market value nor the book value of the stock "sold," but the basis of the stock in the hands of the petitioner.

This being our view of the facts here presented, we are unable to conclude that the distribution was dictated by the reasonable needs of the corporate business of the Pullman Co. In our opinion the distribution was not a partial liquidation within the meaning of section 115 (i) and section 115 (c), but was a distribution essentially equivalent to the distribution of a taxable dividend within the meaning of section 115 (g), read in the light of sections 115 (a) and 115 (b).

It would be unprofitable to distinguish the instant case from the facts presented by all of the cases cited by petitioner, or the cases discussed by us in *J. Natwick, supra*, since, as we have already pointed out, and as petitioner admits, the conclusion in each case depends on the special facts presented. We content ourselves with distinguishing the facts of the instant case from those present in the latest case cited by petitioner, *Samuel A. Upham, supra* (1945). In that case liquidation of the corporation was contemplated and, consequently, an expansion of plant facilities for which a part of the capital of the corporation was set aside was abandoned. Here there was no proposed liquidation on the part of the corporation, and none of its capital had been set aside for physical expansion the abandonment of which made the capital thus set aside unnecessary.

The fact that the Pullman Co. treated the distribution on its books as from capital rather than from earnings and profits, and showed no change in its surplus account, is not controlling. *Adams* v. *Commissioner*, 155 Fed. (2d) 246.

The assessment of the 5 per cent penalty for negligent disregard of rules and regulations does not seem to be justified under the present facts. Petitioner did not report receipt of the amount involved here because of a bona fide belief that it was not taxable. It did not make a specific report to the Commissioner of the facts and circumstances surrounding the distribution, as advised by section 19.115–9 of the regulations, but sufficient information was contained in the return, or more specifically, in the balance sheet attached to the return, to apprise the Commissioner of the fact that the transaction had occurred. This seems indicated by the fact that the controversy which eventually gave rise to this proceeding was begun within three months after the filing of the return. We can not sustain the respondent's action in this respect.

Reviewed by the Court.

*Decision will be entered under Rule 50.*