PAUL E. NIEDRINGHAUS AND GLADYS F. NIEDRINGHAUS, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 27032-89.          Filed August 11, 1992.

Paul E. Niedringhaus, pro se.
*Donna C. Hansberry,* for respondent.

GERBER, *Judge:* By statutory notice of deficiency, respondent determined deficiencies in petitioners' Federal income taxes and additions to tax as follows:

*Additions to tax*

| Year | Deficiency | Sec. 6651 | Sec. 6653(a) | Sec. 6653(a)(1) | Sec. 6654 |
|------|-----------|-----------|--------------|-----------------|-----------|
| 1979 | -0- | $2,030.00 | $406.00 | - - - | $336 |
| 1980 | $4,017 | 2,797.25 | 559.45 | - - - | 712 |
| 1981 | -0- | 2,840.75 | - - - | [1]$568.15 | 870 |

[1] 50 percent of the interest due on any deficiency determined.

*Additions to tax*

| Year | Deficiency | Sec. 6653(b)(1) | Sec. 6653(b)(2) | Sec. 6654 | Sec. 6661[5] |
|------|-----------|-----------------|-----------------|-----------|-----------|
| 1982 | -0- | $3,131 | [1] | $609 | $1,566 |
| 1983 | $3,809 | 7,021 | [2] | 860 | 3,511 |
| 1984 | 5,717 | 8,113 | [3] | 1,020 | 4,057 |
| 1985 | 4,164 | 8,292 | [4] | 950 | 4,146 |

[1] 50 percent of the interest on any deficiency determined.
[2] 50 percent of the interest due on $3,809.
[3] 50 percent of the interest due on $5,717.
[4] 50 percent of the interest due on $4,164.
[5] Respondent no longer contends for an addition to tax under sec. 6661 for the 1982 through 1985 taxable years.

All section references are to the Internal Revenue Code in effect for the years in issue, and Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

The parties now agree that there are deficiencies in Federal income taxes due from petitioners for 1979 through 1985, as follows:

| Year | Tax liability | Tax assessed paid | Tax assessed unpaid | Deficiency to be assessed |
|------|------|------|------|------|
| 1979 | $8,120 | $4,038 | $4,082 | -0- |
| 1980 | 11,189 | - - - | 7,172 | $4,017 |
| 1981 | 11,363 | - - - | 12,064 | (701) |
| 1982 | 6,262 | - - - | 6,262 | -0- |
| 1983 | 14,042 | - - - | 10,233 | 3,809 |
| 1984 | 16,227 | 700 | 9,810 | 5,717 |
| 1985 | 16,584 | 1,700 | 10,720 | 4,164 |

The issues remaining for our consideration are:

1. Whether petitioners are liable for the additions to tax under section 6651(a)(1) for 1979, 1980, and 1981;

2. whether petitioners are liable for the additions to tax under section 6653(a) for 1979 and 1980 and the section 6653(a)(1) addition to tax for 1981;

3. whether petitioners are liable for the additions to tax under section 6653(b)(1) for 1982 through 1985 and the additions to tax under section 6653(b)(2) for 1983 through 1985;

4. whether petitioners are liable for the additions to tax under section 6654 for 1979 through 1985; and

5. if petitioners are not liable for the additions to tax under section 6653(b)(1) and (2) for 1982 through 1985, whether in the alternative petitioners are liable for the additions to tax under sections 6651(a)(1) and 6653(a)(1) or (2) for 1982 through 1985.

### FINDINGS OF FACT

The stipulations of facts and attached exhibits are incorporated herein by this reference.

On the date of the filing of the petition in this case, petitioners resided in Northbrook, Illinois.

Petitioner Paul Niedringhaus (petitioner or Mr. Niedringhaus) graduated from the U.S. Military Academy at West Point, New York (West Point), sometime before 1960. After his graduation from West Point, petitioner served in the Army for a few years, including a tour of duty in Korea. Following his resignation from the Army, petitioner worked

in the Philadelphia, Pennsylvania, area variously as a supervisor in a machine shop, a stock broker, and a manufacturer's representative. Since 1960, petitioner has been a self-employed manufacturer's representative in the Chicago, Illinois, area doing business as Penco Precision (Penco). Petitioner sells inspection equipment to industry. Petitioner operated out of his residence in Northbrook, Illinois, during 1979 through 1985 (the years in issue). Over the years petitioner has represented 5 to 10 different companies and has 200 to 300 customers.

Petitioner Gladys Niedringhaus (Mrs. Niedringhaus) attended college for 1 year, after which she worked as a secretary until her marriage to petitioner in 1960. Following her marriage to petitioner, Mrs. Niedringhaus worked for 2 years as an assistant to the personnel director of a large company. Mrs. Niedringhaus ceased working outside the home at about the time of the birth of her first child.

Since 1960, Mrs. Niedringhaus has performed office work for Penco. She prepares the invoices and packing slips and deposits checks paid by Penco's customers. Mrs. Niedringhaus received no formal training in bookkeeping and devised her own bookkeeping system for Penco which is sufficient for her purposes.

For the years 1960 through 1985, petitioners maintained contemporaneous records of Penco's income and expenses. Petitioners maintained a joint bank account at Northfield Bank for approximately 25 years which they used for personal and business purposes (the Northfield account). At some point in time, petitioners sent a letter to the Northfield Bank, advising it that petitioner was the sole owner of Penco Precision and he wanted Northfield Bank to process checks also under Penco's name.

In December 1983, petitioner opened a separate business bank account in Penco's name at Glenview State Bank (the Glenview account). Petitioner opened the Glenview account because he decided the business was getting bigger and, for bookkeeping purposes, it would be easier to keep the business account separate from the personal account. Petitioners deposited Penco's gross receipts into the Glenview account between December 1983 and June 1984. Petitioners made no deposits into the Glenview account from July 1984 through October 1985. From July 1984 through October 1985,

petitioners deposited Penco's gross receipts into the Northfield account. In November 1985, petitioner changed the name of the Glenview account from "Penco Precision" to "Penco Precision Supplier Escrow Account". Petitioner changed the name of the Glenview account because he believed that maintaining the funds in an escrow account would protect the funds (which were due his suppliers) from seizure by the Internal Revenue Service (IRS). Petitioners deposited Penco's gross receipts into the Glenview account from November 1985 through October 1986. The Northfield account and the Glenview account were the only bank accounts petitioners maintained during 1982 through 1985.

For the years 1960 through 1978, Mr. Niedringhaus prepared petitioners' Federal income tax returns by looking at invoices and the checkbook to determine Penco's yearly income and calculate costs of goods sold, and by looking at the checkbook and the out-of-pocket expenditures file to determine Penco's yearly expenses.

Sometime in 1978, petitioner began to attend meetings conducted by certain tax protester groups. In 1979, petitioner decided that he would not file returns. Petitioner advised Mrs. Niedringhaus he was not going to file tax returns and she told him that she did not agree with his decision to cease filing returns. She also advised Mr. Niedringhaus to work it out through legal methods. Petitioner did not consult any attorney or tax return preparer outside the tax protester movement regarding his obligation to file tax returns.

Around 1980, petitioner became a member of the Constitutional Patriots Association, a group which objected to some of the income tax laws. Sometime in 1982, petitioner joined the Belanco Religious Organization (Belanco),[1] a tax protester group founded by Paul Bell (Bell). Bell claimed that members of his religious organization were exempt from taxation. Petitioner did not embrace Bell's tax-exemption theory. Bell also claimed that the 16th Amendment was unconstitutional and individuals were not required to file tax returns. Petitioner concluded that Bell had some workable ideas because Bell

---

[1] It appears that this organization is the same Belanco Religious Order, founded by Paul Bell, which is mentioned in the following cases: *United States v. Witvoet,* 767 F.2d 338 (7th Cir. 1985); *United States v. Streich,* 759 F.2d 579 (7th Cir. 1985); *In re Grand Jury Witness,* 695 F.2d 359 (9th Cir. 1982); *United States v. House,* 617 F. Supp. 240 (W.D. Mich. 1985); *Gromnicki v. Commissioner,* T.C. Memo. 1988-358.

had not been prosecuted, even though allegedly over a number of years Bell publicly announced that he was not going to pay his taxes. Petitioner was a dues-paying member of Belanco from 1982 through 1985.

In addition, petitioner attended meetings held by the Mid-America Commodities and Barter Association (MACBA).[2] Some of MACBA's members apparently engaged in bartering to avoid taxes. Petitioner did not get involved in bartering. MACBA principally conducted discussions on the tax laws. It also allegedly converted money into silver.

Jenco Metal Products (Jenco Metal) was one of petitioner's customers. Jenco Metal issued a check in the amount of $14,527 to Penco on November 19, 1982, for some equipment. Petitioner addressed the invoice (dated November 18, 1982) for this equipment to "Jenco South" at an address in Florida. Petitioner endorsed Jenco Metal's check "Penco Precision, Paul Niedringhaus, Sole Owner" and sent it to Bill Ryche (Ryche), a principal in MACBA. Ryche deposited this check in an account maintained by MACBA allegedly to convert it to silver.[3] A few months later, MACBA sent petitioner $14,527 in cash. The $14,527 invoice was one of Penco's bigger invoices. Petitioner did not need the $14,527 in his business at the time he endorsed Jenco Metal's check over to MACBA. Mrs. Niedringhaus wrote two checks to MACBA in February 1983 in the amount of $220 and $2,277.34. Other Jenco Metal checks issued to Penco were deposited into the Northfield account or the Glenview account.

Petitioners made estimated tax payments regarding their income tax liabilities for the years 1960 through 1978. They made no estimated tax payments regarding their income tax liabilities for the years 1979 through 1985.

Petitioners timely filed Federal income tax returns from at least 1960 through 1978. Petitioners filed delinquent, original Federal income tax returns for 1979 through 1984 on August 18, 1986. They filed a delinquent, original Federal income tax return for 1985 on March 5, 1987. Petitioners did not request extensions of time in which to file their returns

---

[2] The record regarding MACBA's activities is very sparse. The Court of Appeals for the Seventh Circuit has described MACBA as "a clearinghouse for tax protestors and persons who wished to avoid detection by the IRS." *United States v. Jungles,* 903 F.2d 468, 472 (7th Cir. 1990).

[3] Neither party introduced evidence to show what MACBA actually did with the funds between the time of deposit and their return to petitioner.

for 1979 through 1985. Mrs. Niedringhaus received no income for 1979 through 1985 and filed no separate tax returns for those years.

The original income tax returns for 1979 through 1984 filed on August 18, 1986, report only gross receipts or sales on Schedule C, which sums are then also shown as business income on the face of the applicable return, in the following amounts:

| Year | Gross receipts business income |
| --- | --- |
| 1979 | $45,789 |
| 1980 | 30,259 |
| 1981 | 43,135 |
| 1982 | 28,014 |
| 1983 | 40,976 |
| 1984 | 40,071 |

These returns indicate that petitioners claimed personal exemptions for themselves and three dependent children. They provide no other information regarding income, deductions, expenses, or credits.

Petitioners later filed amended returns for 1979, 1980, 1981, 1983, and 1984, and an original, delinquent return for 1985, on the following dates reporting the following items:

*Schedule C income*

| Date filed | Year | Gross receipts | Net profit | Itemized deductions | Interest income |
| --- | --- | --- | --- | --- | --- |
| 11/5/86 | 1979 | $245,316 | $38,907 | $7,249 | -0- |
| 11/17/86 | 1980 | 240,019 | 46,498 | 7,538 | -0- |
| 12/15/86 | 1981 | 279,933 | 44,987 | 7,104 | $175 |
| 2/2/87 | 1983 | 235,139 | 59,294 | 11,174 | 185 |
| 2/17/87 | 1984 | 271,209 | 61,228 | 8,301 | 220 |
| 3/5/87 | 1985 | 267,702 | 61,155 | 7,535 | 288 |

Petitioner prepared the delinquent returns for the years in issue from the records of income and expenses he had retained for those years.

The deficiencies determined by respondent for 1980, 1983, and 1984 and the overassessment for 1981 reflect the changes from the returns filed in August 1986 and the amended returns that were filed later.

Respondent began an investigation of possible criminal violations of the internal revenue laws by petitioner in February 1986. On July 10, 1986, Robert Mravca (Mr. Mravca), the Criminal Investigation Division special agent investigating petitioner, served a summons on First Chicago Bankcard, seeking records relating to petitioner for 1981 through the present. Petitioner received a copy of this summons on July 11, 1986.

Mr. Mravca interviewed petitioner on September 17, 1986, and petitioner was not willing to disclose any information to Mr. Mravca. Petitioner only acknowledged information of which Mr. Mravca was already aware. Petitioner told Mr. Mravca at this meeting that petitioners had filed their tax returns around September 1, 1986.

On March 28, 1989, petitioner was charged in a four-count bill of information in the U.S. District Court, Northern District of Illinois, with failure to file Federal income tax returns for 1982 through 1985, in violation of section 7203 (the criminal charges). He entered a plea of guilty on July 13, 1989, with regard to the criminal charges for 1982, 1983, and 1984. Petitioner was sentenced pursuant to his guilty plea on October 11, 1989.[4]

OPINION

The parties agree as to the amount of petitioners' income tax liability for each year in issue. At issue is whether petitioners are liable for various additions to tax.

*Section 6653(b) Addition to Tax*

Respondent determined that all of the underpayments of tax are due to fraud under section 6653(b)(1) and (2)[5] for 1982, 1983, 1984, and 1985.

Section 6653(b)(1) provides that if any part of the underpayment is due to fraud, there will be an addition to tax equal to 50 percent of the entire underpayment. The addition to tax under section 6653(b)(2), however, applies only to that portion of the underpayment attributable to

---

[4] The record does not contain a copy of the bill of information for the criminal charges nor does it contain any information regarding the sentence imposed pursuant to petitioner's plea of guilty for the 1982, 1983, and 1984 years.

[5] The addition to tax for fraud is now contained in sec. 6663 of the Internal Revenue Code of 1986.

fraud. Fraud is defined as an intentional wrongdoing designed to evade tax believed to be owing. *Powell v. Granquist,* 252 F.2d 56 (9th Cir. 1958); *Miller v. Commissioner,* 94 T.C. 316, 332 (1990).

Respondent has the burden of proving by clear and convincing evidence that an underpayment exists for the years in issue and that some portion of the underpayment is due to fraud. Sec. 7454(a); Rule 142(b). To meet this burden, respondent must show that petitioners intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of taxes. *Stoltzfus v. United States,* 398 F.2d 1002 (3d Cir. 1968); *Webb v. Commissioner,* 394 F.2d 366 (5th Cir. 1968), affg. T.C. Memo. 1966-81; *Rowlee v. Commissioner,* 80 T.C. 1111, 1123 (1983). Respondent need not prove the precise amount of the underpayment resulting from fraud, but only that some part of the underpayment of tax for each year in issue is attributable to fraud. *Lee v. United States,* 466 F.2d 11, 16-17 (5th Cir. 1972); *Plunkett v. Commissioner,* 465 F.2d 299, 303 (7th Cir. 1972), affg. T.C. Memo. 1970-274. Petitioners concede that there is an underpayment for each of the years in issue; respondent, therefore, has met her burden of proof as to the underpayment of tax for each year.

The existence of fraud is a question of fact to be resolved upon consideration of the entire record. *Gajewski v. Commissioner,* 67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978); *Estate of Pittard v. Commissioner,* 69 T.C. 391 (1977). Fraud is not to be imputed or presumed, but rather must be established by some independent evidence of fraudulent intent. *Beaver v. Commissioner,* 55 T.C. 85, 92 (1970); *Otsuki v. Commissioner,* 53 T.C. 96 (1969). Fraud may not be found under "circumstances which at the most create only suspicion." *Davis v. Commissioner,* 184 F.2d 86, 87 (10th Cir. 1950); *Petzoldt v. Commissioner,* 92 T.C. 661, 700 (1989). However, fraud may be proved by circumstantial evidence and reasonable inferences drawn from the facts because direct proof of the taxpayer's intent is rarely available. *Spies v. United States,* 317 U.S. 492 (1943); *Rowlee v. Commissioner, supra; Stephenson v. Commissioner,* 79 T.C. 995 (1982), affd. 748 F.2d 331 (6th Cir. 1984). The taxpayer's entire course of conduct may establish the requisite fraudulent intent. *Stone v.*

*Commissioner,* 56 T.C. 213, 223-224 (1971); *Otsuki v. Commissioner, supra* at 105-106. The intent to conceal or mislead may be inferred from a pattern of conduct. See *Spies v. United States, supra* at 499.

Courts have relied on several indicia of fraud in considering the section 6653(b) addition to tax cases. Although no single factor may necessarily be sufficient to establish fraud, the existence of several indicia may be persuasive circumstantial evidence of fraud. *Solomon v. Commissioner,* 732 F.2d 1459, 1461 (6th Cir. 1984), affg. per curiam T.C. Memo. 1982-603; *Beaver v. Commissioner, supra* at 93.

Circumstantial evidence which may give rise to a finding of fraudulent intent includes: (1) Understatement of income; (2) inadequate records; (3) failure to file tax returns; (4) implausible or inconsistent explanations of behavior; (5) concealment of assets; (6) failure to cooperate with tax authorities; (7) filing false Forms W-4; (8) failure to make estimated tax payments; (9) dealing in cash; (10) engaging in illegal activity; and (11) attempting to conceal illegal activity. *Bradford v. Commissioner,* 796 F.2d 303, 307 (9th Cir. 1986), affg. T.C. Memo. 1984-601. See *Douge v. Commissioner,* 899 F.2d 164, 168 (2d Cir. 1990), affg. in part and revg. in part and remanding an oral opinion of this Court dated July 1, 1988. These "badges of fraud" are nonexclusive. *Miller v. Commissioner, supra* at 334. The taxpayer's background and the context of the events in question may be considered as circumstantial evidence of fraud. *United States v. Murdock,* 290 U.S. 389, 395 (1933); *Spies v. United States, supra* at 497; *Plunkett v. Commissioner, supra* at 303.

The record before us provides a basis for finding the underpayment of tax for 1982, 1983, 1984, and 1985 is due to fraud on the part of petitioner. Petitioner is well educated and an experienced businessman. He filed tax returns from at least 1960 through 1978. He was aware of his obligation to file Federal income tax returns. Even though he believed his business generally was expanding, petitioner did not prepare or file returns for 1979 through 1985 until respondent commenced a criminal investigation. Petitioner consistently and substantially understated his income for 1979, 1980, 1981, 1982, 1983, 1984, and 1985.

Petitioner claims that he filed delinquent tax returns before he learned of respondent's investigation. Petitioners,

however, received a copy of the summons notifying them of the criminal investigation on July 11, 1986, approximately 1 month before the delinquent returns were filed. Petitioners stipulated this fact, but contend that the stipulation may have been made in error and ask to be relieved from their stipulation.

Parties are bound by their stipulations without a showing that evidence contrary to the stipulation is substantial or the stipulation is clearly contrary to facts disclosed by the record and justice requires that the stipulation be qualified, changed, or contradicted in whole or in part. Rule 91(e); *Loftin & Woodard, Inc. v. United States,* 577 F.2d 1206, 1232 (5th Cir. 1978); *Jasionowski v. Commissioner,* 66 T.C. 312, 317-318 (1976). No such showing has been made here. The Court is not required to accept petitioner's self-serving testimony.[6] *Geiger v. Commissioner,* 440 F.2d 688, 689-690 (9th Cir. 1971), affg. per curiam T.C. Memo. 1969-159; *Sharwell v. Commissioner,* 419 F.2d 1057, 1060 (6th Cir. 1969), vacating and remanding on other issues T.C. Memo. 1968-89; *Tokarski v. Commissioner,* 87 T.C. 74, 77 (1986); *Surloff v. Commissioner,* 81 T.C. 210, 239 (1983). Respondent has introduced credible evidence establishing that petitioners filed the delinquent returns approximately 1 month after they were notified of respondent's investigation. Additionally, petitioner testified that he received notification of the criminal investigation on July 11, 1986. Consequently petitioners will not be relieved from their stipulation that they received notification of the criminal investigation on July 11, 1986, a date prior to their filing delinquent returns for the years in issue.

Petitioner, though "knowledgeable about * * * [his] tax-paying responsibilities, consciously decided to unilaterally opt out of our system of taxation." *Miller v. Commissioner,* 94 T.C. 316, 335 (1990). While the mere failure to file tax returns may not be fraudulent, *Kotmair v. Commissioner,* 86

---

[6] Petitioners rely on the unsworn declaration of Robert G. Stift (Stift) to corroborate petitioner's testimony. The declaration was an exhibit to their reply to respondent's answer. Outside of the obvious hearsay problems with the declaration, it was never offered at the trial or admitted into the record; hence, it cannot be considered as evidence. Petitioners did not call Stift as a witness at the trial. We are left with the conclusion that had Stift been called to testify, his testimony would have been unfavorable to petitioners. *McKay v. Commissioner,* 89 T.C. 1063, 1069 (1987), affd. 886 F.2d 1237 (9th Cir. 1989); *Pollack v. Commissioner,* 47 T.C. 92, 108 (1966), affd. 392 F.2d 409 (5th Cir. 1968); *Wichita Terminal Elevator Co. v. Commissioner,* 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947).

T.C. 1253 (1986), it can be evidence of the intent to evade tax. *Bradford v. Commissioner, supra* at 307. Petitioner also ceased filing estimated tax payments for the years in issue even though he knew that his business was expanding. Petitioner continued his deceptive behavior until he learned of respondent's criminal investigation. "This malfeasance weighs heavily against petitioners, particularly when we consider that petitioners knew of their filing requirements and had a prior history of filing timely tax returns." *Miller v. Commissioner, supra* at 336.

The facts show that petitioner did not intend to voluntarily pay his tax. Most telling is petitioner's failure to make estimated tax payments or to file returns until respondent began the investigation. It is well settled that later repentant behavior does not absolve a taxpayer of his antecedent fraud. *Badaracco v. Commissioner,* 464 U.S. 386, 394 (1984); *Plunkett v. Commissioner,* 465 F.2d 299, 303 (7th Cir. 1972), affg. T.C. Memo. 1970-274; *Miller v. Commissioner, supra.*

We find that petitioner's failure to file returns, combined with his failure to make estimated tax payments, was a deliberate attempt to conceal his correct tax liability and to frustrate its collection. *Miller v. Commissioner, supra* at 337.

Respondent has also relied upon collateral estoppel and several actions of petitioner in support of her determination of an addition to tax under section 6653(b).

*Collateral Estoppel*

Respondent contends that petitioner is collaterally estopped by his criminal conviction under section 7203 for 1982 through 1984 from denying his failure to file returns for those years was willful. The doctrine of collateral estoppel, or estoppel by judgment, is intended to avoid repetitious litigation by precluding a second litigation of any issue of fact or law that was actually litigated and that culminated in a valid and final judgment. *Kotmair v. Commissioner, supra* at 1262. Under the doctrine of collateral estoppel, a judgment in a prior action precludes litigation, in a second cause of action, of issues actually litigated and necessary to the outcome of the first action. *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326 n.5 (1979). Collateral estoppel applies to issues of fact or law previously litigated. *Meier v. Commissioner,* 91

T.C. 273, 283-286 (1988). Collateral estoppel has been employed concerning failure to file situations. See *Castillo v. Commissioner,* 84 T.C. 405, 409-410 (1985).

Collateral estoppel, however, is an affirmative defense which must be raised in a party's pleading. Rule 39. An affirmative defense not pleaded is deemed waived. *Gustafson v. Commissioner,* 97 T.C. 85, 90 (1991); *Jefferson v. Commissioner,* 50 T.C. 963, 966-967 (1968). In the answer, respondent pled collateral estoppel in support of the alternative determination that petitioners are liable for additions to tax under sections 6651(a) and 6653(a). However, collateral estoppel is not available in support of her determination of additions to tax under section 6653(b) for 1982, 1983, 1984, and 1985 because respondent did not raise it with respect to these additions. Accordingly, respondent has waived the affirmative defense of collateral estoppel with respect to the section 6653(b) addition to tax.

## Other Actions in Support of Fraud

Respondent contends that petitioners' actions surrounding the deposit of a $14,527 check into a MACBA bank account are evidence of fraud. Respondent posits, on the basis of the description of MACBA in *United States v. Jungles,* 903 F.2d 468, 472 (7th Cir. 1990), as "a clearinghouse for tax protesters and persons who wished to avoid detection by the IRS", that the check was deposited into a MACBA bank account in order to avoid detection by the IRS.

Petitioners, however, claim in effect that the MACBA transaction was not undertaken to avoid tax. According to petitioner, he forwarded the check to Ryche of MACBA, at a time when petitioner did not need the funds for his business, to be converted into silver as a hedge against inflation. Additionally, petitioner states that within a few months he had MACBA return the money when it was needed in his business and because fluctuations in the silver market caused him to worry about the wisdom of investing in silver.[7]

Petitioner has provided an explanation for the MACBA transaction which respondent has failed to rebut. Although

---

[7] In his posttrial filings, which we have treated as his briefs, petitioner attempts to add additional or clarifying information to the testimony adduced at the trial on the MACBA transaction or other matters. Statements in briefs, however, do not constitute evidence and cannot be used as such to supplement the record. Rule 143(b).

the circumstances relating to this $14,527 check raise a suspicion as to the purpose for the actions petitioner undertook, respondent cannot rest on suspicion alone to carry the burden of proof as to fraud. *Davis v. Commissioner,* 184 F.2d 86, 87 (10th Cir. 1950); *Petzoldt v. Commissioner,* 92 T.C. 661, 700 (1989).

Respondent also contends that petitioners' use of their personal bank account to deposit business income after opening a separate business account, and petitioners' use of their business bank account to deposit business income after changing the name of that account, were deliberate attempts to prevent the collection of tax and are evidence of fraud.

Petitioners used the Northfield account for personal and business purposes until December 1983 when they opened the Glenview account for the business, retaining the Northfield account generally for personal transactions. They used the Glenview account for business purposes until July 1984. Between July 1984 and October 1985, petitioners did not use the Glenview account but again used the Northfield account for personal and business purposes. In November 1985, petitioner changed the name of the Glenview account to "Penco Precision Supplier Escrow Account" and resumed using it for business purposes. According to petitioner, he changed the name of the Glenview account at the time "the tax situation was coming to the forefront", because he was advised that "if there should be some adverse ruling against my interpretation of the tax, maybe they would seize my funds and that if I put it in a supplier escrow account, that would show that * * * [those] funds had to be used to pay my suppliers." Respondent would have us infer that petitioner was attempting to secrete his assets to avoid paying his tax liabilities. Penco, however, is an unincorporated business and petitioner's personal assets were available to satisfy business-related tax liabilities. Other than the MACBA transaction, there is nothing in the record to suggest that petitioner attempted to specifically secrete his personal assets from respondent.

Although none of petitioner's "additional actions" individually would suffice to carry respondent's burden of clearly and convincingly proving fraud, taken together they present additional support for respondent's determination.

Petitioners, relying on *Cheek v. United States,* 498 U.S. 192 (1991), contend that there was no fraud intended "because of * * * [petitioner's] good faith, although erroneous, understanding of the tax laws due to his having accepted a false premise into his thinking process about the question of tax liability." According to petitioner, he was under an "induced dementia" and as a result "did not believe that the tax applied to him".

The Supreme Court has defined willfulness, as used in the criminal tax statutes, as the voluntary, intentional violation of a known legal duty. *Cheek v. United States,* 498 U.S. at 201. In *Cheek,* the Supreme Court reversed a tax evasion conviction where the District Court had instructed the jury that a defendant's good-faith misunderstanding must be "objectively reasonable." The Court held that the Government cannot carry its burden of demonstrating that the defendant willfully failed to file a tax return unless the Government has negated "a defendant's claim of ignorance of the law or a claim that because of a misunderstanding of the law, * * * [defendant] had a good-faith belief that * * * [defendant] was not violating any of the provisions of the tax laws." *Cheek v. United States,* 498 U.S. at 202. The inquiry properly should focus on whether the defendant actually believed that he or she did not have to file the return. The reasonableness or unreasonableness of a defendant's belief is relevant only for purposes of assessing the credibility of the defendant's claim. *Cheek v. United States,* 498 U.S. at 202; *United States v. Lussier,* 929 F.2d 25, 31 (1st Cir. 1991).

The premise of *Cheek* is that a person cannot be convicted of willful failure to file a tax return if he subjectively believes in good faith that the tax laws do not apply to him.[8] As the Supreme Court explained: "In the end, the issue is whether, based on all the evidence, the Government has proved that the defendant was aware of the duty at issue, which cannot be true if the jury credits a good-faith misunderstanding and belief submission, whether or not the claimed belief or mis-

---

[8] In a recently issued memorandum opinion, this Court cited *Cheek v. United States,* 498 U.S. 192 (1991), but did not address its application to civil cases. See *Coulter v. Commissioner,* T.C. Memo. 1992-224. In *Coulter,* the taxpayer argued that he was not subject to additions to tax for fraud because he was "taken in" by a tax-protest promoter and did not believe that he was subject to tax. We rejected taxpayer's argument because the Internal Revenue Service had notified him that returns must be filed.

understanding is objectively reasonable." *Cheek v. United States,* 498 U.S. at 202.

The term "willfully", as used in sections 7201, 7202, 7203, 7204, 7205, 7206, and 7207, has been interpreted to require a specific intent to violate the law. *United States v. Pomponio,* 429 U.S. 10, 12 (1976); *United States v. Bishop,* 412 U.S. 346, 361 (1973); *Kotmair v. Commissioner,* 86 T.C. 1253, 1273 (1986). We have held that the term "willfully" as used in section 7201 encompasses all the elements of fraud which are envisioned in section 6653(b). *Amos v. Commissioner,* 43 T.C. 50, 55 (1964), affd. 360 F.2d 358 (4th Cir. 1965). We have interpreted the "due to fraud" language of section 6653(b) to require proof of specific intent to evade a tax believed to be owing. *Wright v. Commissioner,* 84 T.C. 636, 639 (1985). It follows that a good-faith misunderstanding of the tax laws could negate fraud under section 6653(b). See *Granado v. Commissioner,* 792 F.2d 91, 93 (7th Cir. 1986), affg. per curiam T.C. Memo. 1985-237 (fraud under section 6653 "'is intentional wrongdoing on the part of the taxpayer * * * to avoid a tax known to be owing'") (quoting *Akland v. Commissioner,* 767 F.2d 618, 621 (9th Cir. 1985), affg. T.C. Memo. 1983-249); see also *Klaphake v. Commissioner,* T.C. Memo. 1990-375; *Clark v. Commissioner,* T.C. Memo. 1986-586.

There is a difference, however, between a good-faith misunderstanding of the law and a good-faith belief that the law is invalid or a good-faith disagreement with the law. *United States v. Burton,* 737 F.2d 439, 442-443 (5th Cir. 1984); *United States v. Ware,* 608 F.2d 400, 405 (10th Cir. 1979). As the Supreme Court has stated:

Claims that some of the provisions of the tax code are unconstitutional are submissions of a different order. They do not arise from innocent mistakes caused by the complexity of the Internal Revenue Code. Rather, they reveal full knowledge of the provisions at issue and a studied conclusion, however wrong, that those provisions are invalid and unenforceable. Thus in this case, Cheek paid his taxes for years, but after attending various seminars and based on his own study, he concluded that the income tax laws could not constitutionally require him to pay a tax.

We do not believe that Congress contemplated that such a taxpayer, without risking criminal prosecution, could ignore the duties imposed upon him by the Internal Revenue Code and refuse to utilize the mechanisms provided by Congress to present his claims of invalidity to the courts and to abide by their decisions. * * * As we see it, he is in no position to claim

that his good-faith belief about the validity of the Internal Revenue Code negates willfulness or provides a defense to criminal prosecution under §§7201 and 7203. Of course, Cheek was free in this very case to present his claims of invalidity and have them adjudicated, but like defendants in criminal cases in other contexts, who "willfully" refuse to comply with the duties placed upon them by the law, he must take the risk of being wrong.
[*Cheek v. United States,* 498 U.S. at 205-206; fn. ref. omitted.]

As was explained recently by the Court of Appeals for the Tenth Circuit:

"Willfulness" is defined as the "voluntary, intentional violation of a *known legal duty.*" *Cheek v. United States,* 111 S. Ct. at 610 (emphasis added). To be a relevant defense to willfulness, then, Willie, because of his belief or misunderstanding, must not have known he had a legal duty. *Id.* at 611 (defendant must be "ignorant of his duty"). Thus, his belief must be descriptive—he must believe that the law *does not* apply to him. A normative belief that the law *should not* apply to him leaves Willie fully aware of his legal obligations and simply amounts to a disagreement with his known legal duty and a "studied conclusion . . . that [the law is] invalid and unenforceable." *Id.* at 612-13. * * * [*United States v. Willie,* 941 F.2d 1384, 1392 (10th Cir. 1991).]

We find that petitioner did not have a good-faith belief that he was not required to file tax returns, report his income, or pay tax for 1982 through 1985. The record shows that petitioner merely thought he could elude prosecution. Moreover, reviewing the record in the best light for petitioner, it shows that he considered the tax laws to be unconstitutional. Petitioner's testimony demonstrates that his misunderstanding, if any, went to the constitutionality of the tax laws. For example, in response to an inquiry as to why petitioner filed the delinquent returns when he did, he stated:

Well, I was in communication with my legal advisor, Mr. Stift, and he had been trying to convince me that my interpretation of the tax law was wrong.

And I also saw that some of these people who I had put my trust in were having their own legal problems. And, therefore, I *changed my mind and decided that I would have to comply with the law.* [Emphasis added.]

Petitioner's reliance on advisers would not preclude a finding of fraud in this case. The testimony establishes that petitioner's reliance did not go to whether he was required by law to file; rather, petitioner's reliance related to the ques-

tion of whether he could continue failing to file the tax returns without detection.

Mrs. Niedringhaus' testimony regarding their failure to file returns for 1979 through 1985 also shows that petitioner did not honestly misunderstand his obligation to file the tax returns but merely disagreed with the tax laws:

[Respondent] And then for 1979 through 1985, you didn't file returns; is that correct?

[Mrs. Niedringhaus] Paul got very interested, as he has testified in this, I think you call it a tax protestor thing.

And as Paul has testified—or as you have brought out—that an individual out in California, over many years, had convincing information regarding taxes and the passage of the—

[Respondent] Okay.

[Mrs. Niedringhaus]—16th Amendment. The fact that one outspoken individual in California was never investigated—

[Respondent] Okay.

[Mrs. Niedringhaus]—despite the fact that he had gone on record for five years, invited the press, and had it in the press—

[Respondent] Yes.

[Mrs. Niedringhaus]—the government have tacit approval to that individual's actions. And I think—

[Respondent] Mrs. Niedringhaus, could—

[Mrs. Niedringhaus]—that that was convincing to Paul.

[Respondent] Okay. I just asked the question, you didn't file returns between 1979 and 1985; is that correct?

[Mrs. Niedringhaus] Paul has testified so.

[Respondent] Okay.

[Mrs. Niedringhaus] I, at the time, that Paul said that he was not going to—that he was believing what all of these individuals were saying, I said to him—and we were down in the office at the time—I don't agree with this. I don't agree that you should not file.

You should work it some other way. You should, you know, write to your Senator and say, you know, I've heard that the 16th Amendment was never ratified. And work at it through the legal processes, even though they are very slow. And I did say to Paul, I don't think you should do it.

At best this testimony shows that petitioner believed that he should not have to file returns since the provisions of the tax code requiring same were unconstitutional. A belief that the tax laws are unconstitutional and should not apply, however, is not a sufficient defense to fraud. *Cheek v. United States, supra; United States v. Willie, supra* at 1392. We cannot accept petitioner's self-serving testimony, especially where it contradicts credible testimony. *Geiger v. Commissioner,* 440 F.2d 688, 689-690 (9th Cir. 1971), affg. per

curiam T.C. Memo. 1969-159; *Sharwell v. Commissioner,* 419 F.2d 1057, 1060 (6th Cir. 1969), vacating and remanding on other issues T.C. Memo. 1968-89; *Tokarski v. Commissioner,* 87 T.C. 74, 77 (1986); *Surloff v. Commissioner,* 81 T.C. 210, 239 (1983). Petitioner's testimony that he did not file returns because he did not believe the tax laws applied to him is not credible.

The evidence clearly and convincingly establishes that petitioner is liable for the additions to tax under section 6653(b)(1) and (2) for 1982 through 1985. Because the additions to tax under section 6653(b) apply, we need not consider respondent's alternative argument under sections 6651(a)(1) and 6653(a) for 1982 through 1985.

*Fraud—Mrs. Niedringhaus*

There is no basis in the record to find that any part of the underpayment in any of the years in issue is due to fraud on Mrs. Niedringhaus' part. She had no separate income for the years in issue and urged petitioner to file returns for those years. There is no evidence showing that the delinquent returns (to which she was a party) are fraudulent. Therefore, we hold that the fraud additions determined by respondent do not apply to her. See *Cirillo v. Commissioner,* 314 F.2d 478, 484 (3d Cir. 1963), affg. in part and revg. in part T.C. Memo. 1961-192. Because of our holding that Mr. Niedringhaus' acts were fraudulent for these taxable years, respondent's alternative determinations concerning sections 6651(a)(1) and 6653(a) are moot.

*Section 6651(a)(1) Addition to Tax*

Respondent determined additions to tax under section 6651(a)(1) for the late filing of petitioners' 1979, 1980, and 1981 returns. Petitioners filed these returns on August 13, 1986, after they discovered that petitioner was under investigation by respondent.

Section 6651(a)(1) imposes an addition to tax of 5 percent of the amount of the tax due for each month a return is delinquent, up to a maximum of 25 percent. The addition to tax is not applicable if the lateness is due to reasonable cause and not to willful neglect. Sec. 6651(a)(1); *United States v. Boyle,* 469 U.S. 241, 245 (1985). Petitioners have

the burden of proving that the failure to file is due to reasonable cause and not willful neglect. *Davis v. Commissioner*, 81 T.C. 806, 820 (1983), affd. without published opinion 767 F.2d 931 (9th Cir. 1985). Whether the late filing of an income tax return is due to reasonable cause or willful neglect is a question of fact. *Commissioner v. Walker*, 326 F.2d 261, 264 (9th Cir. 1964), affg. on this issue 37 T.C. 962 (1962).

Reasonable cause for the failure to timely file a return exists if the taxpayer exercised ordinary business care and prudence but, nevertheless, was unable to file the return within the time prescribed by law. Sec. 301.6651-1(c)(1), Proced. & Admin. Regs.; *Estate of La Meres v. Commissioner*, 98 T.C. 294, 325 (1992). In order to disprove "willful neglect", a taxpayer must prove that the late filing did not result from a "conscious, intentional failure or reckless indifference." *United States v. Boyle, supra* at 245-246. A taxpayer's belief that no return is required in itself is not sufficient to show that the failure to file was due to reasonable cause. *Lawrence Block Co. v. Commissioner*, 12 T.C. 366 (1949); *P. Dougherty Co. v. Commissioner*, 5 T.C. 791, 800 (1945), affd. 159 F.2d 269 (4th Cir. 1946).

Petitioners have failed to show that their failure to file returns for 1979, 1980, and 1981 was due to reasonable cause and not willful neglect. Petitioners were fully aware of their duty to timely file tax returns but they elected not to file the returns until notified of the IRS criminal investigation. Therefore, we hold that petitioners are liable for the additions to tax under section 6651(a)(1) for 1979, 1980, and 1981.

*Section 6653(a) Additions*

Respondent determined that all of the underpayment of tax for 1979, 1980, and 1981, is due to negligence or the intentional disregard of rules and regulations.

Section 6653(a)[9] provides an addition to tax if any part of an underpayment is due to negligence or intentional disregard of rules. Negligence is the lack of due care or failure to do what a reasonable and ordinarily prudent person would do in a similar situation. *Neely v. Commissioner*, 85 T.C. 934, 947 (1985). Petitioners have the burden of proving that the

---

[9] Sec. 6653(a)(1) and (2) for 1981.

additions to tax under section 6653(a) do not apply for 1979, 1980, and 1981. Rule 142(a); *Luman v. Commissioner,* 79 T.C. 846, 860-861 (1982). As a general rule, taxpayers are charged with knowledge of the law. *Harrington v. Commissioner,* 93 T.C. 297, 314 (1989). While a showing of good faith by the taxpayer may preclude the existence of fraud, good faith does not always negate negligence. *Wesley Heat Treating Co. v. Commissioner,* 30 T.C. 10, 26 (1958), affd. 267 F.2d 853 (7th Cir. 1959); *Richlands Medical Association v. Commissioner,* T.C. Memo. 1990-660, affd. without published opinion 953 F.2d 639 (4th Cir. 1992). Although taxpayers are not subject to the addition to tax for negligence where they make honest mistakes in complex matters, they are required to take reasonable steps to determine the law and to comply with it. See *Adams v. Commissioner,* T.C. Memo. 1982-223, affd. without published opinion 732 F.2d 159 (7th Cir. 1984). Additionally, petitioners' failure to file has some bearing on negligence. See *Emmons v. Commissioner,* 92 T.C. 342 (1989), affd. 898 F.2d 50 (5th Cir. 1990).

Petitioners have not shown that their actions were reasonable or prudent, or that they exercised due care. Petitioner made no effort to consult an attorney or tax return preparer outside the tax protester movement regarding his obligation to file tax returns. Petitioners were advised of and knew of their obligation to file tax returns for 1979, 1980, and 1981, but they intentionally failed to file the returns. Therefore, petitioners are liable for the section 6653(a) additions to tax for 1979 and 1980 and the section 6653(a)(1) and (2) additions to tax for 1981.

*Section 6654 Addition to Tax*

Respondent also determined that petitioners are liable for additions to tax under section 6654(a) for failure to pay estimated income tax. Imposition of the addition to tax under section 6654(a) applies where prepayments of tax, either through withholding or by making estimated quarterly tax payments during the course of the year, do not equal the percentage of total liability required under the statute, unless petitioners show that one of the several statutory exemptions applies. Sec. 6654(a); *Grosshandler v. Commissioner,* 75 T.C. 1, 20-21 (1980). Petitioners have made no

such showing. For the years in issue petitioners filed no timely returns and made no estimated tax payments. They had substantial taxable income for the years in issue; therefore, we hold that they are liable for the additions to tax under section 6654(a) for those years.

To reflect the foregoing,

*Decision will be entered under Rule 155.*