T.C. Summary Opinion 2002-45

UNITED STATES TAX COURT

KYLE L. AND CAROL B. THORNTON, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 11133-01S.            Filed May 3, 2002.

Kyle L. and Carol B. Thornton, pro se.

Douglas S. Polsky, for respondent.


COUVILLION, Special Trial Judge:  This case was heard pursuant to section 7463 of the Internal Revenue Code in effect at the time the petition was filed.[1]  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.

---

[1]  Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for the years at issue.  All Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined deficiencies of $3,781 and $4,746 in petitioners' Federal income taxes, respectively, for 1999 and 2000 and corresponding penalties under section 6662(a) in the amounts of $756 and $949.

Some of the facts were stipulated, and those facts, with the annexed exhibits, are so found and are incorporated herein by reference. At the time the petition was filed, petitioners' legal residence was Albuquerque, New Mexico.

In the stipulation, the parties agreed to reduced deficiencies of $3,697 and $4,690, respectively, for 1999 and 2000.[2] Petitioners conceded their liability for the agreed deficiencies. The sole issue for decision is whether petitioners are liable for the section 6662(a) penalty for each of the years 1999 and 2000.

Petitioners were both employed full time during 1999 and 2000. Mr. Thornton (petitioner) was coordinator for a paramedic program of the University of New Mexico School of Medicine. Mrs.

---

[2] The reduced deficiencies result from respondent's concession that petitioners were entitled to itemized deductions for charitable contributions of $313.70 and $189.82, respectively, for 1999 and 2000 in lieu of the corresponding amounts of $6,260 and $7,200 claimed on their returns. Respondent also conceded that petitioners substantiated unreimbursed employee business expenses of $24.51 and $546.67, respectively, for the 2 years at issue in lieu of the corresponding amounts of $9,394 and $11,440 claimed on their returns. Due to the limitations of sec. 67(a), the conceded amounts for unreimbursed employee business expenses do not result in a tax benefit to petitioners for the years at issue.

Thornton was supervisor of the communications center for an ambulance service.

On their joint Federal income tax returns for 1999 and 2000, petitioners reported adjusted gross income of $74,949 and $85,228, respectively. For both years, petitioners claimed itemized deductions under section 63(d) reflected on Schedule A, Itemized Deductions, of their returns.

In the notice of deficiency, respondent disallowed the total amounts claimed as itemized deductions for charitable contributions and unreimbursed employee business expenses. Petitioners had claimed the following amounts on their returns:

|  | 1999 | 2000 |
|---|---|---|
| Charitable contributions | $6,260 | $ 7,200 |
| Unreimbursed employee expenses and tax preparation fees (before the sec. 67(a) limitation) | 9,394 | 11,440 |

At least for the 2 years prior to the years at issue, petitioners did not utilize the services of a preparer in filing their Federal income tax returns. Petitioner prepared the returns himself. For the 1999 return, petitioner prepared a return as he had done in past years. Based on that draft, petitioner testified that he and his wife would have owed $1,500

in taxes.[3]  Petitioners did not file the draft of the return

because, at some point, it was suggested to petitioner by friends

that he should engage the services of a return preparer, Robin

Beltran.  These friends represented that Mr. Beltran was very

knowledgeable in tax law and could get tax refunds that other

preparers could not get.  Petitioner believed that Mr. Beltran

was a "C.P.A." and a former "IRS employee".  Petitioner

thereafter contacted Mr. Beltran to prepare petitioners' 1999

return.  As best as the Court can ascertain from the record,

petitioner had one meeting, at the home of Mr. Beltran, with

regard to the 1999 return.  The only documentation petitioner

provided to Mr. Beltran was the draft of the 1999 return

petitioner had prepared.  Mr. Beltran did not request or discuss

the need for any documentation to substantiate the income or

expenses shown on the draft prepared by petitioner, nor did Mr.

Beltran question or ascertain from petitioner the amounts to be

claimed on the return for charitable contributions and

unreimbursed employee business expenses.  The return prepared by

Mr. Beltran listed the same amounts shown on petitioner's draft

return, except for the deductions claimed for charitable

---

[3]     The draft for 1999 prepared by petitioner was not
offered in evidence; however, petitioner testified that "I was
going to pay $1,500".  The Court construes that statement to mean
that petitioners would have owed $1,500 after all withholdings
and prior payments of taxes for 1999.

contributions and unreimbursed employee business expenses, which Mr. Beltran grossly inflated.  The return prepared by Mr. Beltran reflected an overpayment of $2,324.  Petitioners filed that return, and the $2,324 was subsequently refunded to them.

For the year 2000, petitioner again prepared a draft return, which he submitted to Mr. Beltran.  On the return prepared by Mr. Beltran, which petitioners filed, the deductions for charitable contributions and unreimbursed employee business expenses were also inflated.  That return reflected an overpayment of $2,338, which was also refunded to petitioners in due course.

With respect to preparation of the 2000 return by Mr. Beltran, petitioner testified:

> The following year then I went back to him and he then charged me $250 because he got me $2,500 back or whatever those estimations were, and again, I certainly saw that difference between my return and the return he prepared, and I did ask him if that seemed rather excessive, and again, * * * he was quite convincing, seemed to be quite credible in his explanations and his referring to his tax books, et cetera, explaining that "No, these numbers are very allowable."  Sort of a tax averaging kind of theory if you will, and again, quite credible and quite convincing in his explanation.

Regarding the inflated amounts claimed on the returns, petitioner further testified:

> MR. THORNTON: The amount that we provided to him and the amount that we could provide proof for was minimal compared to what he submitted for us, and then when I asked him about that again, he was very convincing and seemed very

credible in his explanation of what * * * [another taxpayer before the Court] called a loophole.

THE COURT: But did you question what sort of a loophole would that be, because you're acknowledging that the amounts that you really paid for -- gave to charity were laughable amounts compared to what --

MR. THORNTON: Absolutely.

THE COURT:  —-he put on the return for you?

MR. THORNTON: Again, he was simply very, very credible in the way he would explain and the way he would assure, and this is a perfectly allowable, perfectly acceptable amount for our level of income.

THE COURT: Did you ever go to some other professional to verify that --

MR. THORNTON: No sir.

*       *       *       *       *       *       *

MR. THORNTON: No sir.  Now, and that's -- the term if it's too good to be true, it is.  Compared to what? Certainly it was much better compared to my own tax preparation, but this was the first professional I've been to, and --

THE COURT: Anybody can put numbers down.

MR. THORNTON: I understand that now, sir.  Yes, sir.


When petitioners later received notices from respondent that their returns for 1999 and 2000 would be audited, Mr. Beltran advised petitioners to ignore such notices and not meet with

respondent's agents.  Petitioners followed that advice, and the notice of deficiency followed in due course.[4]

As noted above, the deficiencies are no longer in dispute. Petitioners contend they should be absolved of liability for the section 6662 penalties because they relied on the representations of their return preparer.

Section 6662(a) provides for an accuracy-related penalty equal to 20 percent of any portion of an underpayment of tax required to be shown on the return that is attributable to the taxpayer's negligence or disregard of rules or regulations.  Sec. 6662(a) and (b)(1).  Negligence consists of any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code and disregard consists of any careless, reckless, or intentional disregard.  Sec. 6662(c).  The courts have refined the Code definition of negligence as a lack of due care or failure to do what a reasonable and prudent person would do under similar circumstances.  Allen v. Commissioner, 925 F.2d 348, 353 (9th Cir. 1991), affg. 92 T.C. 1 (1989).  Section 1.6662-3(b)(1), Income Tax Regs., provides that "Negligence is strongly indicated where * * * a taxpayer fails to make a reasonable attempt to ascertain the correctness of a deduction * * * on a return which

---

[4]    This case is one of numerous cases heard by the Court involving tax returns prepared by Mr. Beltran, which essentially involve the same deductions.  At some point in the audit process, Mr. Beltran ceased all communications with his former clients.

would seem to a reasonable and prudent person to be 'too good to be true' under the circumstances."  An exception applies when the taxpayer demonstrates (1) there was reasonable cause for the underpayment, and (2) the taxpayer acted in good faith with respect to the underpayment.  Sec. 6664(c).  Whether the taxpayer acted with reasonable cause and in good faith is determined by the relevant facts and circumstances.  The most important factor is the extent of the taxpayer's effort to assess the proper tax liability.  Stubblefield v. Commissioner, T.C. Memo. 1996-537; sec. 1.6664-4(b)(1), Income Tax Regs.  Under section 1.6664-4(b)(1), "Circumstances that may indicate reasonable cause and good faith include an honest misunderstanding of fact or law that is reasonable in light of all of the facts and circumstances, including the experience, knowledge, and education of the taxpayer."  Moreover, a taxpayer is generally charged with knowledge of the law.  Niedringhaus v. Commissioner, 99 T.C. 202, 222 (1992).  Although a taxpayer is not subject to the addition to tax for negligence where the taxpayer makes honest mistakes in complex matters, the taxpayer must take reasonable steps to determine the law and to comply with it.  Id.

Under certain circumstances, a taxpayer may avoid the accuracy-related penalty for negligence where the taxpayer reasonably relied on the advice of a competent professional.  Sec. 1.6664-4(b)(1), Income Tax Regs.; sec. 6664(c); Freytag v.

Commissioner, 89 T.C. 849, 888 (1987), affd. 904 F.2d 1011 (5th Cir. 1990), affd. 501 U.S. 868 (1991).  However, a taxpayer bears the responsibility for any negligent errors of his or her professional adviser.  Am. Props., Inc. v. Commissioner, 28 T.C. 1100 (1957), affd. per curiam 262 F.2d 150 (9th Cir. 1958).  Reliance on a professional adviser, standing alone, is not an absolute defense to negligence; it is only one factor to be considered.  In order for reliance on a professional adviser to relieve a taxpayer from the negligence penalty, the taxpayer must establish that the professional adviser on whom he or she relied had the expertise and knowledge of the relevant facts to provide informed advice on the subject matter.  Freytag v. Commissioner, supra at 888.

Petitioners made no effort to ascertain the professional background and qualifications of their return preparer, Mr. Beltran.  The drafts of petitioners' returns prepared by petitioner showed tax liabilities considerably in excess of the amounts shown on Mr. Beltran's returns.  Petitioner knew that Mr. Beltran's returns were incorrect and knew that his returns contained inflated itemized deductions.  Petitioner admitted questioning Mr. Beltran as to the deductibility of the amounts claimed on the returns but made no effort to contact other tax professionals to verify the accuracy of Mr. Beltran's representations.  Petitioner, in his testimony, characterized the

inflated amounts on Mr. Beltran's returns as "too good to be true".  The Court is satisfied from the record that Mr. Beltran knew, or had reason to know, all the relevant facts upon which, had he been a qualified professional, he could have accurately advised petitioners on the amount of their allowable deductions. Mr. Beltran never sought the correct amount of petitioners' charitable contributions and employee business expenses.  The Court is further satisfied that petitioners knew they were required under the law to substantiate deductions claimed on their returns and, moreover, knew that the amounts on their returns for charitable contributions and unreimbursed employee business expenses were not only questionable but were incorrect. On this record, the Court sustains respondent on the section 6662(a) accuracy-related penalties for 1999 and 2000.

Section 6673(a) authorizes the Court to require a taxpayer to pay to the United States a penalty not exceeding $25,000 when, in the Court's judgment, proceedings have been instituted or maintained by the taxpayer primarily for delay or where the taxpayer's position in the proceeding is frivolous or groundless. Although petitioners conceded the deficiencies and challenged only the penalties under section 6662(a), the Court considers petitioners' claim that they should not be liable for the penalties to be frivolous and groundless.  Petitioners knew that a substantial portion of the itemized deductions at issue was

false and could not be sustained.  Petitioners had reservations at the times the returns were filed as to the accuracy of the claimed itemized deductions.  Petitioners knew that they were entitled to deduct only amounts that they had actually paid. They made no attempt to determine the qualifications of their return preparer; they did not consult with tax professionals as to the accuracy of Mr. Beltran's representations; and, moreover, they cited no legal authority to the Court that, under similar facts, would exonerate them from the penalties under section 6662(a).  The function of this Court is to provide a forum to decide issues relating to liability for Federal taxes.  At trial, petitioners wisely saw that they had no case with respect to the deficiencies and, instead, chose to challenge the imposition of the penalties under section 6662(a).  Any reasonable and prudent person, under the facts presented to the Court, should have known that the claimed deductions could not have been sustained, and petitioners knew that.  This Court does not and should not countenance the use of this Court as a vehicle for a disgruntled litigant to proclaim the wrongdoing of another, their return preparer, as a basis for relief from a penalty that was determined by respondent on facts that clearly are not sustainable.  Golub v. Commissioner, T.C. Memo. 1999-288. Petitioners, therefore, have interfered with the Court's function to the detriment of other parties having cases with legitimate

issues for the Court to consider.  Petitioners have caused needless expense and wasted resources, not only for the Court, but for its personnel, respondent, and respondent's counsel. Under these circumstances, the penalty under section 6673 is warranted, and petitioners will be ordered to pay a penalty of $500 to the United States under section 6673(a).

Reviewed and adopted as the report of the Small Tax Case Division.

Decision will be entered under Rule 155.