T.C. Memo. 2004-235


UNITED STATES TAX COURT


PHILIP L. AND SARA N. ECKERT, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 1437-03L.                      Filed October 13, 2004.


Philip L. and Sara N. Eckert, pro sese.

<u>James A. Kutten</u>, for respondent.


MEMORANDUM OPINION


CARLUZZO, <u>Special Trial Judge</u>:  In a Notice of Determination
Concerning Collection Action(s) Under Section 6320 and/or 6330
dated January 10, 2003, respondent proposed to proceed with
collection of petitioners' unpaid 1994 Federal income tax.[1]

_____

[1] Section references are to the Internal Revenue Code in
effect at the time the petition was filed.

Petitioners object to respondent's proposed collection activity upon the ground that their 1994 Income tax liability has been fully paid.

Background

Some of the facts in this case have been stipulated and are so found. At the time the petition was filed, petitioners resided in O'Fallon, Illinois. References to petitioner are to Philip L. Eckert.

For years prior to 1994 petitioners owned 100 percent of the shares of, and operated Southwestern Illinois Family and Children's Testing and Therapy Clinic, Inc. (Southwestern). For periods during 1992 through 1995, Southwestern had unpaid Federal employment tax liabilities that totaled $26,000 (employment tax liabilities).[2]

During March 1996, petitioner delivered to respondent three checks in the amounts of $10,000, $15,000, and $1,000, for a total of $26,000. Each of the three checks contained petitioner's Social Security number and the notation "Pay only to IRS". None of the checks specifically identified the liability to which the check related. Respondent applied the $26,000 received from petitioner to Southwestern's $26,000 unpaid employment tax liabilities.

---

[2] All amounts are rounded to the nearest dollar.

On June 1, 1999, petitioners filed an untimely 1994 joint Federal income tax return (the 1994 return) on which they reported an income tax liability of $18,524. Withholding credits of $9,155, were applied against this liability, but no other payments were made with the return. On February 7, 2000, the tax reported on petitioners' 1994 return, related additions to tax, and interest were assessed (the 1994 tax liability).

On April 27, 2001, respondent issued to petitioners a Final Notice--Notice of Intent to Levy and Notice of Your Right to a Hearing, for the unpaid balance of their 1994 tax liability. On May 3, 2001, respondent issued to petitioners a Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320. On May 8, 2001, respondent filed a Notice of Federal Tax Lien (tax lien notice) with the Recorder of Deeds, St. Clair County, Belleville, Illinois, with respect to the 1994 tax liability.

During May 2001, petitioners sent to respondent two checks in the amounts of $11,859 and $10,000, designated to be applied to their 1994 tax liability. Both checks were subsequently dishonored for insufficient funds. On June 3, 2001, before receiving notice that the checks had been dishonored, respondent released the tax lien notice. The release stated, in part, that petitioners had satisfied their 1994 tax liability.

On or about July 25, 2001, petitioners sent to respondent a money order in the amount of $10,200. The money order included

petitioner's Social Security number and the notation "1994 1040".
The $10,200 payment was applied by respondent to petitioners'
then outstanding 2000 tax liability.[3]

An administrative hearing was held on August 2, 2002.
During that hearing petitioner claimed that the 1994 tax
liability had been paid in full by the three checks previously
sent by petitioners to respondent in March 1996.  As of the date
of the administrative hearing, petitioners had not filed tax
returns for 1995, 1997, 1998, 1999, or 2000.  Consequently,
respondent would not consider an installment agreement with
respect to petitioners' 1994 tax liability.  Petitioners
subsequently filed a tax return for each of these years.

In August 2002, petitioners submitted a Form 433-A,
Collection Information Statement for Wage Earners and Self-
Employed Individuals.  Petitioners listed their total monthly
income and living expenses as $10,320 and $7,611, respectively.
By letter dated August 8, 2002, petitioners notified respondent
that the $10,200 payment made on July 25, 2001, was intended to
be, and should have been, applied to their 1994 tax liability.
Respondent subsequently took the necessary steps to apply the
$10,200 payment to the 1994 tax liability.

---

[3] At the time, it appeared that petitioners' 1994 liability
had been paid in full.

On November 26, 2002, the settlement officer who conducted the administrative hearing sent petitioners a letter inviting petitioners to discuss an installment agreement. Thereafter, petitioner twice informed the settlement officer that he would provide additional financial information in connection with an installment agreement, but petitioner never did so.

On January 10, 2003, respondent issued to petitioners a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330. In the notice of determination, respondent determined, in pertinent part: (1) The filing of the tax lien notice was sustained because the 1994 tax liability remained unpaid; (2) the notice of intent to levy was sustained because respondent could not reach an installment agreement with petitioners, and (3) all applicable laws and administrative procedures had been satisfied.

On August 12, 2003, respondent filed a motion for summary judgment. On November 3, 2003, the motion was denied and the case was remanded to respondent's Appeals Office for reconsideration regarding whether petitioners had fully paid their 1994 tax liability.

On November 20, 2003, respondent revoked the release of the tax lien notice. In December 2003, respondent's settlement officer offered petitioners the opportunity for a further administrative hearing, but petitioners did not respond. On

February 18, 2004, respondent once again filed a Notice of Federal Tax Lien with respect to petitioners' 1994 tax liability.

Discussion

Petitioners do not allege any irregularities in the assessment process of their 1994 tax liability, and we are satisfied that there were none. Furthermore, petitioners do not claim that respondent has failed to satisfy any of the requirements of section 6320 or section 6330, and we are satisfied that respondent has satisfied all of those requirements. Instead, the dispute between the parties in this case focuses primarily on whether petitioners have fully paid their 1994 tax liability. According to respondent, they have not, and respondent has determined to collect the outstanding portion of that liability by levy and through the notice of tax lien. Because the amount or existence of petitioners' 1994 liability is properly at issue, we review de novo respondent's determination as to the existence of that liability.[4] Boyd v. Commissioner, 117 T.C. 127, 131 (2001); Landry v. Commissioner, 116 T.C. 60, 62 (2001).

At the administrative hearing, petitioner claimed that all three of the checks delivered to respondent in March 1996 were intended in satisfaction of petitioners' 1994 tax liability and

---

[4] Respondent agreed to apply the $10,200 money order sent by petitioners in July 2001 to the 1994 tax liability.

none of the checks should have been applied to Southwestern's unpaid employment tax liability. At trial, petitioner took the position that only the $10,000 check was erroneously applied to Southwestern's unpaid employment tax liability. Specifically, petitioner testified that in March 1996 an IRS employee "came knocking on my door * * * saying that we hadn't submitted the '94 tax return". According to petitioner, he gave the revenue agent the $10,000 check at that time, together with verbal instructions to apply the $10,000 to petitioners' 1994 tax liability. Like the other two checks delivered to respondent in March 1996, the $10,000 check did not bear any indication as to the tax liabilities to which the amount was to be applied. Furthermore, nothing in the record suggests that petitioners had previously received any correspondence from respondent with respect to the 1994 tax liability. At the time the checks were delivered to respondent, petitioners had not yet filed their 1994 return. The 1994 return was not filed by petitioners until June 1, 1999. Furthermore, respondent did not assess petitioners' 1994 tax liability until February 7, 2000.

Disregarding petitioner's self-serving, uncorroborated, and implausible testimony on the point, see Niedringhaus v. Commissioner, 99 T.C. 202, 212 (1992), we find that petitioners have failed to present any credible evidence that the $10,000 payment made in March 1996 was intended to have been applied to

petitioners' 1994 tax liability.  To the extent that petitioners were visited by an IRS employee in March 1996, we think it more likely than not that the visit related to Southwestern's employment tax liabilities.  Furthermore, we think it more than coincidence that the $26,000 paid to respondent in March of 1996 was, at the time, the amount of Southwestern's outstanding employment tax liability.

Our conclusion on this point is further supported by the payments made by petitioners in May 2001.  As noted, in May 2001, petitioners sent two separate checks to respondent which totaled $21,859 to be applied to their 1994 tax liability.  Both checks were subsequently returned for insufficient funds.  Despite petitioner's explanation to the contrary, we find it implausible and unlikely that petitioners would make payments in excess of $21,000 with respect to the 1994 tax liability that they considered to have been previously paid.

Respondent introduced a certified transcript of account for petitioners' 1994 tax liability.  The transcript reflects, among other things, petitioners' tax liability for the taxable year 1994 and all payments received with respect to this liability. The transcript provides that petitioners' withholding tax credit for 1994 was applied to their 1994 tax liability, as well as the two checks sent by petitioners in May 2001 and the subsequent

reversals when the two checks were returned for insufficient funds.[5]

After applying the $10,200 payment to petitioners' 1994 taxable year, which respondent has agreed to do, a portion of petitioners' 1994 tax liability remains outstanding. Accordingly, respondent's determination to proceed with collection of petitioners' outstanding 1994 Federal income tax liability is sustained.

To reflect the foregoing,

Decision will be

entered for respondent.

---

[5] The transcript of petitioners' 1994 taxable year does not reflect the $10,200 payment by petitioners in July 2001 that was applied to petitioners' 2000 taxable year.