T.C. Summary Opinion 2004-140


UNITED STATES TAX COURT


CAROLYN LAMB, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 14660-03S.          Filed October 12, 2004.


Carolyn Lamb, pro se.

<u>R. Scott Schieldes</u>, for respondent.


ARMEN, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time that the petition was filed.[1]  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.

---

[1]  Unless otherwise indicated, all subsequent section references are to the Internal Revenue Code in effect for 2000, the taxable year in issue.  All Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined a deficiency in petitioner's Federal income tax in the amount of $11,834 for the taxable year 2000.

This is a substantiation case. After a concession by respondent, the issue for decision is whether petitioner is entitled to various Schedule C deductions in amounts greater than those allowed and conceded by respondent. We hold that petitioner is entitled to the deductions to the limited extent provided herein.

## Background

Some of the facts have been stipulated, and they are so found. At the time that the petition was filed, petitioner resided in Houston, Texas.

During 2000, the taxable year in issue, petitioner was self-employed. She owned and operated two businesses: a child care business and a property maintenance and cleanup business.

## Child Care Business

Petitioner operated the child care business out of her residence. She generally had 8 to 12 children in her care during the day throughout the workweek. The children included infants, preschoolers, elementary school students, and a 13-year-old.

The children would be dropped off at petitioner's home by their parents on their way to work, and would be picked up by their parents on their way home. After dropoff by the parents in the morning, petitioner would drive the older children to school;

she would return after school had finished and drive them back to her house.  The preschoolers would remain in petitioner's care throughout the day.  Petitioner would use her Chevy Astro van to transport the children to and from school.

Petitioner operated her child care business without paid assistance.  However, petitioner's sister "or somebody" would help out on a volunteer basis.

Property Maintenance and Cleanup Business

Petitioner operated this business as a contractor for Action Properties of Tomball, Texas.  Petitioner provided services such as lawn mowing and debris clearing for townhomes and single-family residences that had been repossessed after default on loans guaranteed by the U.S. Department of Housing and Urban Development.  Petitioner would care for the property until it was resold.  Most of the properties were located in Houston and the immediate environs.

Petitioner's older son, Clifton Lamb, was employed as a truck driver in 2000, but he helped out on an occasional basis in the property maintenance and cleanup business.  Clifton's friend, Michael Dean, who lived in petitioner's home "on and off", also helped out.  Petitioner's younger son, Adam Lamb, may also have helped out from time to time when he was not attending college at Texas Southern University.  Whether other individuals may have provided assistance in the operation of the business is not

disclosed in the record.

## Petitioner's Methods of Paying Expenses

During 2000, petitioner maintained a personal checking account that she used to pay personal expenses. In contrast, petitioner did not maintain a separate checking account for either of her businesses, nor did she pay any business expense using her personal checking account. Rather, petitioner chose to deal principally in cash, and occasionally in money orders, in paying business expenses.

The record does not disclose what receipts, if any, petitioner may have obtained when paying in cash.

## Tropical Storm Allison

In June 2001, petitioner's residence was damaged by Tropical Storm Allison. Until her home was repaired, petitioner lived in a travel trailer.

## Petitioner's Tax Return

For 2000, petitioner filed a Form 1040, U.S. Individual Income Tax Return. Petitioner attached to her return a Schedule C, Profit or Loss From Business, for her childcare business, and a second Schedule C for her property maintenance and cleanup business. On the Schedules C, petitioner reported gross income in the aggregate amount of $92,092 and total expenses in the aggregate amount of $74,179.

On the Schedule C for her childcare business, petitioner

claimed a $3,000 expense deduction under section 179 for a computer and printer.

On her Schedule C for the property maintenance and cleanup business, petitioner claimed a $7,500 expense deduction under section 179 for a trailer ($2,000) and a lawn mower ($5,500). Petitioner also claimed depreciation in the amount of $7,950 on a Ford F150 truck ($2,950) and a GMC Suburban SUV ($5,000). Additionally, petitioner claimed car and truck expenses in the amount of $16,029 in respect of the Ford truck and GMC Suburban. Petitioner claimed various other deductions, including one for landfill expenses ($8,000) and another for contract labor ($7,000).

Respondent's Notice of Deficiency

In the notice of deficiency, respondent determined as follows:

|  | Claimed | Allowed | Disallowed |
|---|---|---|---|
| Child Care Business | | | |
| Computer/printer | $3,000 | --- | $3,000 |
| | | | |
| Property Main. & | | | |
| Cleanup Business | | | |
| Trailer (§179) | 2,000 | --- | 2,000 |
| Lawn mower (§179) | 5,500 | --- | 5,500 |
| Ford F150 (depreciation) | 2,950 | $2,950 | --- |
| Suburban (depreciation) | 5,000 | --- | 5,000 |
| Actual operating expenses | | | |
| (Ford & Suburban) | 16,029 | [1]8,341 | 7,688 |
| Landfill | 8,000 | 4,320 | 3,680 |
| Contract labor | 7,000 | --- | 7,000 |

[1]Ford F150 only.  At trial, respondent conceded that petitioner is entitled to an additional $656.77 in actual operating expenses for the Ford F150.

- 6 -

<u>Petitioner's Petition</u>

In her petition, petitioner asserted that all of her tax records were destroyed by Tropical Storm Allison.  Petitioner also asserted that "I was asked by IRS representative[s] to reconstruct a mileage log from memory which would force me to tell untruths about mileage."  At trial, petitioner did not explain why a reconstruction of her records would necessarily be untruthful.

Discussion

Generally, the Commissioner's determinations are presumed correct, and the taxpayer bears the burden of proving that those determinations are erroneous.  Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933).[2]

In her petition and at trial, petitioner attributed her lack of records to Tropical Storm Allison.  Clearly petitioner suffered damage because of that storm, and some of her records may have been lost or destroyed.  However, a taxpayer is still obliged to reconstruct his or her records as best as possible, and on this score petitioner did not acquit herself well.

In addition, the focus on Tropical Storm Allison begs the question regarding the quality and quantum of records that

---

[2] Sec. 7491(a) does not apply in this case to shift the burden of proof to respondent because petitioner neither alleged that sec. 7491(a) is applicable nor satisfied the threshold requirements of sec. 7491(a)(2)(A) and (B).  See <u>Higbee v. Commissioner</u>, 116 T.C. 438, 442-443 (2001).

petitioner kept in the first instance.  For example, during the year in issue, petitioner maintained a personal checking account that she used to pay personal expenses.  Yet, inexplicably, she did not maintain a separate checking account for either of her businesses, nor did she pay any business expense using her personal checking account.  Rather, she chose to deal principally in cash, and occasionally in money orders.

We find this arrangement odd.  Petitioner provided no persuasive explanation at trial why she would pay her personal expenses by check and her business expenses in cash, particularly given the fact that her businesses generated gross income of $92,092 and that she claimed business expenses of $74,179.  Surely she must have known that paying in cash does not leave the paper trail that is essential to proving entitlement to deductions claimed on a return.  Also, making large purchases in cash, e.g., a $5,500 mower, or even buying money orders, must have been inconvenient, as well as unsafe.  Quite frankly, we regard this proclivity to using cash (or cash substitutes) as fostering testimony that is self-serving.  See Niedringhaus v. Commissioner, 99 T.C. 202, 212 (1992); Tokarski v. Commissioner, 87 T.C. 74, 77 (1986).  This proclivity also reflects poorly on petitioner's credibility.  See Diaz v. Commissioner, 58 T.C. 560, 564 (1972); Kropp v. Commissioner, T.C. Memo. 2000-148.

Also noteworthy is the fact that petitioner failed to call

any witnesses. Perhaps some witnesses who could have provided corroborating testimony could not be located. But one would think that those relatives whom petitioner identified at trial as involved (at least on a volunteer basis) in her businesses could have been called to support her case. See Pollack v. Commissioner, 47 T.C. 92, 108 (1966), affd. 392 F.2d 409 (5th Cir. 1968); Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947).

With these preliminary comments in mind, we turn now to the specific adjustments in issue, beginning with petitioner's child care business.

## A. Child Care Business

Petitioner claimed a deduction of $3,000 pursuant to section 179 for the purchase of a computer and printer in connection with her child care business. Respondent disallowed the deduction on the ground that petitioner failed to establish her cost in the equipment and the date the equipment was placed in service.

Section 179(a) allows a taxpayer to treat the cost of certain property as a current expense for the year in which such property is placed in service, within specified dollar limitations. The taxpayer is required to maintain records that permit specific identification of each piece of section 179 property and that reflect how and from whom such property was acquired and when it was placed in service. Sec. 1.179-5(a),

Income Tax Regs.

In addition, a computer and peripheral equipment such as a printer constitute "listed property" for purposes of section 274(d). Secs. 274(d)(4), 280F(d)(4)(A)(iv); see sec. 168(i)(2)(B). Accordingly, the stringent substantiation requirements of section 274(d) apply.

The record in this case does not permit us to find that petitioner even purchased a computer and printer in 2000, much less its cost and the date placed in service. The only documentary evidence that petitioner introduced was a one-sentence letter on personal stationery from "Frank Anderson", which provided no detail whatsoever other than to assert that petitioner purchased a computer and printer for $3,000 "for the entire setup during the year of 2000."

At trial, petitioner described herself as "computer illiterate". She stated that she had "no idea" what type of software was installed on the computer, and she was totally unfamiliar with any of the computer's specifications. Indeed, she was not even able to describe convincingly the use to which the computer was supposedly put.

In view of the foregoing, we hold that petitioner failed to satisfy her burden of proof. Accordingly, we sustain respondent's determination on this issue.

B.  Property Maintenance and Cleanup Business

    1.  Section 179 Deductions

Petitioner claimed a $2,000 section 179 expense deduction for the purchase of a trailer and a $5,500 section 179 expense deduction for the purchase of a lawn mower.  Respondent disallowed both deductions in their entirety on the grounds that petitioner failed to establish her cost in the trailer and in the lawn mower and the date on which each was placed in service.

We have previously discussed the provisions of section 179 so we dispense with that matter.

        a.  Trailer

At trial, the only document that petitioner introduced regarding the trailer was a "receipt" that was virtually indecipherable and therefore not helpful.  Petitioner was not even able to adequately explain the application of the receipt to the trailer supposedly purchased in 2000.  We say "supposedly purchased in 2000" because the record demonstrates that petitioner claimed a $2,000 section 179 expense deduction for a trailer on her Schedule C for 1999, and there is nothing in the record to demonstrate that petitioner would have needed another trailer in 2000.

        b.  Lawn Mower

At trial, petitioner testified that she purchased a 32-inch walk-behind lawn mower for $5,500 in 2000.  However, the only

document that petitioner introduced to support her testimony was a product registration card from Exmark Manufacturing Co., Inc., indicating that petitioner bought a 32-inch mower on May 20, 1995. This document hardly supports a section 179 expense deduction for 2000. In addition, petitioner's returns for 1998 and 1999 report the purchase of lawn mowers in the aggregate amount of exactly $16,000. We are not persuaded that petitioner spent yet another $5,500 on a lawn mower in 2000.

Although petitioner certainly used a lawn mower(s) in her business, there is nothing in the record to demonstrate persuasively that petitioner is entitled to a section 179 expense deduction for the purchase of a $5,500 lawn mower in 2000.

### c. Conclusion

In sum, petitioner did not satisfy her burden of proof as to either section 179 expense deduction. We therefore hold for respondent on the section 179 issue as to both the trailer and the lawn mower.

### 2. Depreciation Deductions

Petitioner claimed depreciation in the amount of $2,950 on a Ford F150 truck and depreciation in the amount of $5,000 on a GMC Suburban. Respondent allowed in full the depreciation deduction on the Ford; however, respondent disallowed the depreciation deduction on the Suburban in its entirety on the grounds that petitioner failed to establish ownership of the vehicle, its

depreciable basis, and its business percentage use.

The record includes a number of documents related to the Ford F150 and the GMC Suburban. These documents convincingly demonstrate that petitioner had an ownership interest in the Ford F150, but that the GMC Suburban was owned by Clifton Lamb, petitioner's older son.

We are unable to credit the testimony of petitioner that Clifton was merely her nominee. Without the Suburban, Clifton would have been without a vehicle, and petitioner's testimony that he relied on his girlfriend to drive him around is not persuasive.

Based on the foregoing, we hold for respondent on this issue.

3. Vehicle Operating Expenses

Petitioner claimed car and truck expenses of $16,029 for the use of the Ford F150 and the GMC Suburban. Petitioner based the deduction on actual expenses incurred and not the standard mileage rate. Respondent allowed a deduction in the amount of $8,341 for the use of the Ford F150 and disallowed the remainder. At trial, respondent conceded that petitioner was entitled to an additional deduction for the Ford F150 for interest expense in the amount of $656.77.

Petitioner appears to be content with the deduction allowed and conceded by respondent for the use of the Ford F150. In

contrast, she contends that she is entitled to a deduction for the use of the Suburban.

In the case of a passenger automobile, section 274(d) proscribes a deduction on the basis of any approximation or the unsupported testimony of the taxpayer. Sec. 274(d)(4), sec. 280F(d)(5). The term "passenger automobile" is defined as any 4-wheeled vehicle that is manufactured primarily for use on public streets, roads, and highways and that is rated at 6,000 pounds unloaded gross vehicle weight or less. Sec. 280F(d)(5)(A). Although the term "passenger automobile" does not include any truck or van under regulations promulgated by the Commissioner, see sec. 280F(d)(5)(B), petitioner failed to demonstrate that the Suburban comes within the definition of an excepted truck or van, see sec. 1.280F-6T(c)(3)(iii), Temporary Income Tax Regs., 49 Fed. Reg. 42713 (Oct. 24, 1984); sec. 1.274-5T(k)(2), Temporary Income Tax Regs., 50 Fed. Reg. 46033 (Nov. 6, 1985).

Even if the stringent substantiation requirements of section 274(d) were not applicable, and even if we were to conclude that petitioner incurred deductible expenses for the use of a vehicle owned by another taxpayer, the record provides no basis whatsoever for us to estimate a reasonable allowance for the use of the Suburban. See Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957); Vanicek v. Commissioner, 85 T.C. 731, 743 (1985).

- 14 -

In view of the foregoing, we hold that petitioner is entitled to vehicle operating expenses only in the aggregate amount allowed and conceded by respondent in respect of the Ford F150.

4.  Landfill Expense

Petitioner claimed a deduction for landfill expense in the amount of $8,000.  Of this amount, respondent allowed $4,320 based on the following estimate:  one landfill trip per day for 6 days a week for 36 weeks at a per trip price of $20.

At trial, petitioner presented no documentary evidence to support this deduction other than a written statement from Waste Management (WM) attesting to the fact that in 2000 she was a customer of WM's Cougar Landfill.

The amount claimed by petitioner strikes us as an estimate. However, given the nature of her property maintenance and cleanup business, there is little question that she made frequent trips to the dump.  Based on her testimony and the record as a whole, we hold that petitioner is entitled to a deduction for landfill expense in the amount of $5,500.  See Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930).

5.  Contract Labor Expense

Petitioner claimed a deduction for contract labor expense in the amount of $7,000.  Respondent disallowed the deduction in its entirety.

At trial, petitioner testified that the amount in issue was paid to Michael Dean, and she produced a notarized statement signed by him to that effect.  The statement, however, was conclusory and did not provide any details regarding the manner, mode or frequency of payment.

Although petitioner admitted that she did not issue a Form 1099-Miscellaneous to Mr. Dean for 2000, we find that petitioner did incur contract labor expense in that year.  The fact that petitioner was operating two distinct businesses necessarily required that she have some assistance.  Although relatives might have provided their assistance on a volunteer basis, Mr. Dean did not fall into that category, and we doubt that he would have provided his services gratis.

Based on the record as a whole, we hold that petitioner is entitled to a deduction for contract labor expense in the amount of $5,000.  See Cohan v. Commissioner, supra.

C.  Conclusion

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect our disposition of the disputed issue, as well as respondent's concession,

Decision will be entered
under Rule 155.